2013 CO 56

**The PEOPLE of the State of Colorado, Petitioner**

**IN the INTEREST OF O.C., Minor Child**

**and**

**C.M. and C.M., Concerning Intervenors.**

**Supreme Court Case No. 12SC835**

Supreme Court of Colorado.

September 9, 2013

Mullenbach, Acting Deputy County Attorney, Melanie Jordan, Assistant County Attorney, Golden, Colorado

Attorneys for Intervenors: The Bourassa Law Group, LLC, Hillary R. Ross, Denver, Colorado

Guardian ad Litem for the Minor Child: Catherine A. Madsen, P.C., Catherine A. Madsen, Westminster, Colorado

JUSTICE RICE delivered the Opinion of the Court.

¶ 1 In this dependency and neglect case, we hold that section 19–3–507(5)(a), C.R.S. (2013), permits parents, grandparents, and relatives to intervene as a matter of right. We further hold that section 19–3–507(5)(a)'s three-month time requirement does not apply to parents, grandparents, or relatives. We accordingly affirm the judgment of the court of appeals.

## I. Facts and Procedural History

¶ 2 A Petition in Dependency and Neglect was filed in April 2010 a few days after O.C.'s birth. The next month, O.C. was removed from her parents' care because of concerns that her mother was not adequately caring for her, and eventually O.C. was placed in foster care.

¶ 3 O.C.'s grandparents first moved to intervene under C.R.C.P. 24(a) and (b) in October 2010, requesting that O.C. be placed with them. The Jefferson County Division of Children, Youth, and Families ("the County") and the Guardian ad Litem ("GAL") opposed the motion, arguing that the grandparents did not meet the criteria to intervene as a matter of right under section 19–3–507(5)(a). The trial court denied the motion.

¶ 4 In July 2011, the County moved to place O.C. with her grandfather, but then withdrew the motion, asserting that the grandfather had been "unable to make a commitment to caring for [O.C.]." The

Attorneys for Petitioner: Ellen G. Wakeman, Jefferson County Attorney, Jennifer A.

grandfather again moved to intervene. Citing section 19–3–507(5)(a), the trial court denied the motion because O.C. had not been in the grandfather's care for more than three months.

¶ 5 In January 2012, the County moved to terminate both parents' parental rights with respect to O.C. The grandparents again sought to intervene pursuant to section 19–3–507(5)(a). The trial court again denied the motion.

¶ 6 The grandparents appealed, and the court of appeals reversed the trial court's decision and remanded the case to allow the grandparents to intervene. *See In the Interest of O.C.,* 2012 COA 161, ¶ 34, 312 P.3d 226, 2012 WL 4451000. The court of appeals interpreted section 19–3–507(5)(a) to require foster parents, but not relatives, to have had the child in their care for at least three months before intervention as a matter of right is triggered. *Id.* at ¶ 30. In other words, the court of appeals held that section 19–3–507(5)(a) permits grandparents to intervene as a matter of right at any time after adjudication without regard to whether the child has previously been in their care. *Id.* at ¶ 33.

¶ 7 This Court granted certiorari review to determine whether the court of appeals erred in concluding that relatives may intervene as a matter of right under section 19–3–507(5)(a), even when they have not had a child in their care for at least three months prior to filing the motion to intervene.

¶ 8 Subsequently, the trial court placed O.C. with her grandparents and granted a motion by the grandparents to intervene in the case pursuant to section 19–3–507(5)(a). The grandparents thereafter moved to dismiss this appeal as moot. Thus, before reaching the heart of this appeal, we must first address whether the grandparents' appeal is moot.

## II. Mootness

¶ 9 This Court will ordinarily only exercise jurisdiction when an actual controversy exists between adverse parties. *Trinidad Sch. Dist. No. 1 v. Lopez,* 963 P.2d 1095, 1102 (Colo.1998). If a controversy no longer exists or if the relief granted by the Court would not have a practical effect upon an existing controversy, the issue before the Court is moot and typically unreviewable. *Id.*

¶ 10 The Court may make an exception, however, and decide an issue that is otherwise moot when the case involves an issue of great public importance. *Id.* The issue of whether a relative may intervene as of right in termination and placement hearings is a matter of great public importance. Among other things, this issue impacts who may offer evidence at hearings and decisions regarding placement of children and parental rights. That the grandparents were ultimately allowed to intervene in this case does not diminish the broad public import of this issue. In fact, the tortured process preceding the grandparents' eventual intervention underscores the necessity of this Court's review of the issue.

¶ 11 Thus, we now review section 19–3–507(5)(a), notwithstanding the fact that the grandparents were permitted to intervene in this case. *See Humphrey v. Sw. Dev. Co.,* 734 P.2d 637, 639–40 (Colo.1987).

## III. Analysis

¶ 12 Having determined that this case warrants review by this Court, we now consider whether section 19–3–507(5)(a) allows grandparents to intervene as a matter of right. We first review section 19–3–507(5)(a) using the rules of statutory interpretation and determine that section 19–3–507(5)(a) is ambiguous. To resolve this ambiguity, we consider the legislative purpose and statutory scheme, legislative history, and constitutional implications of section 19–3–507(5)(a). We ultimately conclude that section 19–3–507(5)(a)'s three-month time requirement does not apply to parents, grandparents, or relatives. Rather, section 19–3–507(5)(a) allows parents, grandparents, and relatives to intervene as a matter of right without regard

to whether the child has previously been in their care.

## A. Section 19–3–507(5)(a) Is Ambiguous

¶ 13 Statutory construction is a question of law which this Court reviews de novo. *A.M. v. A.C.,* 2013 CO 16, ¶ 8, 296 P.3d 1026, 1030. When interpreting a statute, our primary task is to give effect to the General Assembly's intent. *Id.* In so doing, we look first to the plain language of the statute. *Id.* When the statutory language is unambiguous, we apply it as written and do not resort to other rules of statutory construction. *Id.* When the words chosen by the legislature are unclear because they are susceptible to multiple reasonable, alternative interpretations, the statute is ambiguous. *Id.* (citing *State v. Nieto,* 993 P.2d 493, 500–01 (Colo.2000)).

¶ 14 Section 19–3–507(5)(a) provides:

Parents, grandparents, relatives, or foster parents who have the child in their care for more than three months who have information or knowledge concerning the care and protection of the child may intervene as a matter of right following adjudication with or without counsel.

Section 19–3–507(5)(a) is subject to two reasonable, alternative interpretations. The statute could mean that *all* potential intervenors, including parents, grandparents, and relatives, must have the child in their care for more than three months to be eligible to intervene. Or, the statute could mean that only foster parents must have the child in their care for more than three months to be eligible to intervene. Given these opposing readings of the same language, section 19–3–507(5)(a) on its face contains two opposing meanings, and we therefore conclude that it is ambiguous.

¶ 15 Because section 19–3–507(5)(a) is ambiguous, we may consider the objective the legislature sought to attain, the legislative history, legislative declarations or purposes, and the consequences of a particular construction to ascertain legislative intent.

§ 2–4–203, C.R.S. (2013); *see also Colby v. Progressive Cas. Ins. Co.,* 928 P.2d 1298, 1302 (Colo.1996). In gleaning the meaning of an ambiguous statute, we strive to avoid statutory interpretations that conflict with the Colorado or United States Constitutions. *Hall v. Walter,* 969 P.2d 224, 229 (Colo.1998). And, ultimately, our goal is always to determine and give effect to the intent of the General Assembly. Accordingly, we turn to the General Assembly's declaration of purpose, the overall statutory scheme, and the legislative history to discern the legislative intent. *See* § 2–4–203.

### 1. Legislative Purpose and Statutory Scheme

¶ 16 The legislative purpose and overall statutory scheme of the Children's Code favor reading section 19–3–507(5)(a)'s time requirement as limited to foster parents. As for the purpose, the legislature declared that one of the purposes of the Children's Code is "[t]o preserve and strengthen family ties whenever possible." § 19–1–102(1)(b), C.R.S. (2013). This purpose suggests that relatives would be afforded a right of intervention without having to meet a time requirement.

¶ 17 Likewise, when viewed as a whole, the legislative scheme of the Children's Code suggests that this Court should interpret section 19–3–507(5)(a) to create a right of intervention for relatives of the child without a time requirement. For example, section 19–1–115(1)(a), C.R.S. (2013), permits the trial court to give a preference to the child's grandparents when placing a child outside of the home. Similarly, section 19–3–605(1), C.R.S. (2013), requires the trial court to consider timely requests for placement by relatives and allows the trial court to give preference to a relative when placing a child following an order of termination of the parent-child legal relationship.

¶ 18 In our view, the legislative purpose and legislative scheme conflict with a reading of the statute that requires relatives to have had the child in their care for more than

three months before intervening as a matter of right.

### 2. Legislative History

¶ 19 A review of the legislative history also supports our understanding that section 19–3–507(5)(a)'s time requirement only applies to foster parents. During the 1997 hearings associated with section 19–3–507(5)(a)'s enactment, Representative Jeanne Adkins—the sponsor of the provision—stated that section 19–3–507(5)(a) provides for intervention as of right for the parties listed. Representative Adkins indicated that relatives, unlike unrelated foster parents, have "legitimate information to present" concerning the child and they should have a right to intervene without waiting. Along those same lines, she noted that she inserted the three-month time requirement language to specifically apply to foster parents and foster parents alone. *Hearing on S.B. 97–218 Before the H. Judiciary Comm.*, 61st Gen. Assemb., 1st Sess. (May 5, 1997) (statement of Rep. Jeanne Adkins).

¶ 20 Thus, the legislative history also suggests that the General Assembly intended to create an intervention as a matter of right for parents, grandparents, and relatives without respect to whether the child had been in their care, and to create an intervention as a matter of right for foster parents who have had the child in their care for more than three months.

### 3. Avoid an Unconstitutional Result

¶ 21 Common sense also supports our reading of section 19–3–507(5)(a) because applying the three-month requirement to all groups of potential intervenors—including parents—would lead to an unconstitutional result. Specifically, this interpretation would render at least one portion of the statute unconstitutional because the U.S. Supreme Court has long protected the relationship between a parent and a child, and a parent's right to make decisions regarding the child. *See Troxel v. Granville,* 530 U.S. 57, 66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000); *Quilloin*

*v. Walcott,* 434 U.S. 246, 255, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978). More precisely, a statute preventing a parent from intervening until after having had his child in his care for three months is likely unconstitutional. *See Troxel,* 530 U.S. at 65, 120 S.Ct. 2054 ("[T]he interest of parents in the care, custody, and control of their children ... is perhaps the oldest of the fundamental liberty interests recognized by this Court.").

¶ 22 Having considered those sources we deem pertinent for understanding an ambiguous statute, we determine that section 19–3–507(5)(a)'s three-month time requirement does not apply to parents, grandparents, or relatives. Instead, section 19–3–507(5)(a) permits parents, grandparents, and relatives to intervene as a matter of right without regard to whether the child has previously been in their care. This reading conforms with the legislative purpose and scheme of the Children's Code, is supported by the legislative history of the provision, and avoids a potentially unconstitutional alternative.

¶ 23 Here, the trial court erred when it interpreted section 19–3–507(5)(a) as requiring the grandparents to have had O.C. in their care for more than three months before being able to intervene as a matter of right. Because the grandparents' motion to intervene pursuant to 19–3–507(5)(a) should have been granted, we affirm the court of appeals' judgment.

### IV. Conclusion

¶ 24 We hold that section 19–3–507(5)(a)'s three-month time requirement does not apply to parents, grandparents, or relatives. Rather, section 19–3–507(5)(a) permits parents, grandparents, and relatives to intervene as a matter of right without regard to whether the child has previously been in their care. We accordingly affirm the judgment of the court of appeals.

JUSTICE BOATRIGHT does not participate.