Colorado Court of Appeals Opinions || July 30, 2015


Colorado Court of Appeals -- July 30, 2015
2015 COA 106. No. 14CA2172. People in the Interest of C.G., and Concerning J.N.



 Â 

 
 
 
 COLORADO COURT OF APPEALS

 
 2015 COA 106

 
 



 Court of Appeals No. 14CA2172
 Jefferson County District Court No. 06JV377
 Honorable Ann Gail Meinster, Judge


 The People of the State of Colorado,

 Petitioner-Appellee,

 In the Interest of C.G., and Concerning J.N.

 Respondent-Appellant.


 ORDER REVERSED AND CASE
 REMANDED WITH DIRECTIONS

 Division III

 Opinion by JUDGE DAILEY
 Webb and Richman, JJ., concur

 Announced July 30, 2015


 Ellen G. Wakeman, County Attorney, Writer Mott, Assistant County Attorney, Rebecca Klymkowsky, Assistant County Attorney, Golden, Colorado, for Petitioner-Appellee

 Bachus & Schanker, L.L.C., J. Kyle Bachus, Brian Bradford, Denver, Colorado, for Respondent-Appellant J.N.

 Â 


 
 Â¶1Â Â Â Â Â Â Â  J.N. (father) appeals the trial courtâs order denying as moot his C.R.C.P. 60(b) motion to vacate its prior orders entered in the dependency and neglect proceeding regarding his child, C.G.
 
 Â¶2Â Â Â Â Â Â Â  We consider, as a matter of first impression, whether the orders became moot following the childâs death. Under the circumstances of this case, we conclude that fatherâs request for relief under C.R.C.P. 60(b) was not moot. Alternatively, we are persuaded that father has established that his request for relief meets the âcapable of repetition yet evading reviewâ and âpublic interestâ mootness exceptions. Accordingly, we reverse the order, and remand the matter to the trial court for a determination on the merits of fatherâs C.R.C.P. 60(b) motion.
 
 I. Background
 
 Â¶3Â Â Â Â Â Â Â  In March 2006, the Jefferson County Division of Children, Youth and Families (Division) filed a dependency and neglect petition and assumed temporary custody of the then five-year-old child and his younger half-sibling. The petition asserted that the childâs father, identified as John Doe, âwhereabouts unknown,â had abandoned him. One day after filing the petition, the Division moved to serve John Doe by publication. The court granted the request. Approximately one week later, the Division published notice of the proceeding.


 
 Â¶4Â Â Â Â Â Â Â  In May 2006, the court placed the child in the temporary custody of Jon Phillips, the father of the childâs half-sibling. In November 2006, the court adjudicated the child dependent and neglected by default as to John Doe. The court subsequently granted an allocation of parental responsibilities (APR) for the child to Phillips and terminated its jurisdiction over the proceeding.
 
 Â¶5Â Â Â Â Â Â Â  The child died a year later. Phillips was convicted of first degree murder and child abuse resulting in death. People v. Phillips, 2012 COA 176, Â¶1.
 
 Â¶6Â Â Â Â Â Â Â  Several years later, father, the childâs mother, and the personal representative of the childâs estate commenced a federal court action against the Division, the Denver County Department of Human Services (Denver Department), and two caseworkers from the Denver Department. The claims were brought under 42 U.S.C. Â§ 1983 (2012) for violation of the childâs substantive due process rights. Schwartz v. Booker, 702 F.3d 573, 576 (10th Cir. 2012).
 
 Â¶7Â Â Â Â Â Â Â  In June 2014, father moved for C.R.C.P. 60(b) relief in the dependency and neglect proceeding. He sought to vacate the trialÂ courtâs orders, among others, that (1) found John Doe in default; (2) transferred temporary legal custody of the child to Phillips; (3) adjudicated the child dependent and neglected; (4) awarded APR to Phillips; and (5) terminated the courtâs jurisdiction over the proceeding. Specifically, father asserted that because the Division had failed to exercise due diligence to ascertain his identity before it served him by publication, the default judgment and all later orders were void for lack of due process under C.R.C.P. 60(b)(3). Alternatively, he asserted that the orders should be vacated because the Division had committed fraud on the court.


 
 Â¶8Â Â Â Â Â Â Â  In the motion and in reply to the Divisionâs response that the matter was moot, father maintained that the relief he requested would have a practical effect on an existing controversy â the federal 42 U.S.C. Â§ 1983 action. He explained that vacating the orders would remove any doubt that the child was in the stateâs custody up until the time that he was killed and, thus, would establish that the child had an ongoing special relationship with the state. In requesting a hearing on his motion, he expounded that his request for relief affected the only issue currently pending in the federal action â the childâs custodial status with the state â andÂ voiding the orders would likely enable him to defeat a pending motion for summary judgment.


 
 Â¶9Â Â Â Â Â Â Â  Without holding a hearing, the trial court denied fatherâs motion as moot. It concluded that setting aside the judgment would have no practical legal effect on the dependency and neglect proceeding, which related solely to the childâs status and protection; that fatherâs argument that the motion could impact his federal action was without merit; and that none of the exceptions to the mootness doctrine applied.
 
 II. Mootness
 
 Â¶10Â Â Â Â Â Â Â  Father contends that the trial court erred in finding that, in light of C.G.âs death, his request for C.R.C.P. 60(b) relief was moot. We conclude that fatherâs request for relief is not moot because of the collateral consequence in the dependency and neglect orders in fatherâs federal action.
 
 A. Legal Standard
 
 Â¶11Â Â Â Â Â Â Â  We review de novo the legal question of whether a case is moot. Colo. Mining Assân v. Urbina, 2013 COA 155, Â¶23.
 
 Â¶12Â Â Â Â Â Â Â  When possible, a court should resolve disputes on their merits. Stell v. Boulder Cnty. Depât of Soc. Servs., 92 P.3d 910, 914Â (Colo. 2004). However, when an issue is moot, a court will ordinarily refrain from addressing it. Trinidad Sch. Dist. No. 1 v. Lopez, 963 P.2d 1095, 1102 (Colo. 1998). An issue is moot when the relief sought, if granted, would have no practical effect on an existing controversy. People in Interest of L.O.L., 197 P.3d 291, 293 (Colo. App. 2008).


 
 Â¶13Â Â Â Â Â Â Â  Still, an issue is not moot when the judgment may result in significant collateral consequences to a party. See People in Interest of T.B., 183 Colo. 310, 311, 516 P.2d 642, 643 (1973) (dismissing an appeal as moot because statutory protections eliminated the collateral legal consequences that preserved the issue for appeal); see also Oborne v. Bd. of Cnty. Commârs, 764 P.2d 397, 402 (Colo. App. 1988). Thus, in deciding whether an issue is moot, the court must consider both the direct and collateral consequences that can result from the judgment. People v. Fritz, 2014 COA 108, Â¶21; Putman v. Kennedy, 900 A.2d 1256, 1261 (Conn. 2006).
 
 Â¶14Â Â Â Â Â Â Â  In Oborne, 764 P.2d at 402, a division of this court held that an appeal was not moot when the judgment might have significant collateral consequences, including impacting the partiesâ future rights and obligations. Likewise, a contempt finding is not moot, inÂ part, because it can lead to adverse consequences for the contemnor. White v. Adamek, 907 P.2d 735, 737 (Colo. App. 1995).


 
 Â¶15Â Â Â Â Â Â Â  The Colorado Supreme Court has also recognized the principle that ââa criminal case is moot only if it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction.ââ Moland v. People, 757 P.2d 137, 139 (Colo. 1988) (quoting Sibron v. New York, 392 U.S. 40, 57 (1968)).
 
 Â¶16Â Â Â Â Â Â Â  Whether collateral consequences preclude an issue from being deemed moot turns on showing the reasonable possibility of such consequences. Williams v. Ragaglia, 802 A.2d 778, 783 (Conn. 2002); see also Hamilton ex rel. Lethem v. Lethem, 193 P.3d 839, 849 (Haw. 2008) (concluding that an appeal fell within the collateral consequences exception to the mootness doctrine when there was a ââreasonable possibilityââ that the order would cause harm to a partyâs reputation); In re A.K., 628 S.E.2d 753, 759 (N.C. 2006) (holding that appeal from a juvenile neglect adjudication was not moot as it could reasonably result in collateral legal consequences). In other words, the standard requires a demonstration of more than an abstract, purely speculative injury, but does not require proofÂ that it is more probable than not that the prejudicial consequences will occur. Williams, 802 A.2d at 783.


 
 B. Substantive Due Process
 
 Â¶17Â Â Â Â Â Â Â  Our analysis begins with a review of the requirements for establishing the violation of a childâs substantive due process rights under 42 U.S.C. Â§ 1983.
 
 Â¶18Â Â Â Â Â Â Â  The Due Process Clause of the Fourteenth Amendment protects a personâs life, liberty, and property against government actions. Daniels v. Williams, 474 U.S. 327, 331 (1986); Estate of B.I.C. v. Gillen, 710 F.3d 1168, 1173 (10th Cir. 2013). Section 1983 provides a mechanism to bring a private cause of action for the deprivation by state action of any rights, privileges, or immunities encompassed within the Fourteenth Amendment. Schwartz, 702 F.3d at 579.
 
 Â¶19Â Â Â Â Â Â Â  Generally, state actors are only liable for their own acts, and the Due Process Clause does not require the state to protect persons against criminal conduct of private actors. DeShaney v. Winnebago Cnty. Depât of Soc. Servs., 489 U.S. 189, 195 (1989). But two exceptions to this rule have been recognized. Estate of B.I.C., 710 F.3d at 1173.


 
 Â¶20Â Â Â Â Â Â Â  As pertinent here, the special relationship exception provides that state officials may be liable for the criminal acts of private parties when the state has assumed a special relationship with and control over the victim. Id.; Schwartz, 702 F.3d at 579-80. And this special relationship doctrine applies ââwhen the state assumes control over an individual sufficient to trigger an affirmative duty to provide protection to that individual.ââ J.W. v. Utah, 647 F.3d 1006, 1011 (10th Cir. 2011) (quoting Uhlrig v. Harder, 64 F.3d 567, 572 (10th Cir. 1995)).
 
 Â¶21Â Â Â Â Â Â Â  Children in the custody of the state have a constitutional right to be reasonably safe from harm. Yvonne L. v. New Mexico Depât of Human Servs., 959 F.2d 883, 893 (10th Cir. 1992). The stateâs affirmative duty to protect stems from the limitations that the state has imposed on such a childâs freedom to act on his or her own behalf. DeShaney, 489 U.S. at 200. Thus, inaction by the state in the face of a known danger is insufficient to trigger a constitutional duty to protect unless the state has a custodial or other special relationship with the victim. Graham v. Indep. Sch. Dist. No. I-89, 22 F.3d 991, 995 (10th Cir. 1994).


 
 Â¶22Â Â Â Â Â Â Â  For example, when a special relationship exists between the state and a foster child, a state official may be held liable for violating the childâs constitutional rights when the official knew of a danger, failed to exercise his or her professional judgment to protect the child, and the failure can be affirmatively linked to the childâs injuries. Johnson ex rel. Estate of Cano v. Holmes, 455 F.3d 1133, 1142-43 (10th Cir. 2006); Yvonne L., 959 F.2d at 890. A failure to exercise professional judgment requires more than mere negligence. Johnson, 455 F.3d at 1143. It requires an abdication of professional responsibility, and the abdication must be sufficient to shock the courtâs conscience. Id.
 
 C. Application
 
 Â¶23Â Â Â Â Â Â Â  We conclude that fatherâs request for C.R.C.P. 60(b) relief is not moot because the orders entered in the dependency and neglect proceeding impose a collateral consequence on father. Specifically, they are being urged to deny father relief in the federal action.
 
 1. The Federal Action
 
 Â¶24Â Â Â Â Â Â Â  The federal district court has dismissed fatherâs 42 U.S.C. Â§ 1983 claims against the Division, the Denver Department, and the caseworkers in their official capacity. However, the claims againstÂ the caseworkers in their individual capacity remain pending. See Schwartz v. Booker, No. 09-CV-00915-WJM-KMT, 2014 WL 4056542 (D. Colo. Aug. 14, 2014) (unpublished order). In the phased approach adopted by the federal district court, the first issue before it is the childâs legal status during the months preceding his death. Id.


 
 Â¶25Â Â Â Â Â Â Â  The caseworkers have moved for summary judgment in the federal action, asserting that they cannot be held responsible for the childâs death because he was not in the stateâs custody after May 2006. They rely on the May 2006 order transferring temporary legal custody of the child to Phillips and the January 2007 order awarding APR to Phillips. According to the caseworkers, because these orders show that the child was not in the stateâs custody at or near the time of his death, the requisite special relationship between the child and the state did not exist.
 
 Â¶26Â Â Â Â Â Â Â  Their argument explains how the temporary custody order and the APR order, from which father seeks relief, are being used to bar him from pursuing the federal action under 42 U.S.C. Â§ 1983. As well, the orders finding father in default and adjudicating the child dependent and neglected furnished the basis for the trial courtâsÂ authority to enter the APR order. See People in Interest of K.A., 155 P.3d 558, 561 (Colo. App. 2006) (recognizing that an award of permanent custody to a nonparent cannot be entered through a dependency and neglect proceeding, absent a valid adjudicatory order).


 
 Â¶27Â Â Â Â Â Â Â  A void judgment, however, is a complete nullity and has no legal effect. In re C.L.S., 252 P.3d 556, 560 (Colo. App. 2011). Granting relief under C.R.C.P. 60(b)(3) restores the parties to their position before the final judgment, as if the vacated judgment had not been entered. See Affordable Country Homes, LLC v. Smith, 194 P.3d 511, 514 (Colo. App. 2008) (applying the same principle to relief granted under C.R.C.P. 60(b)(2)).
 
 Â¶28Â Â Â Â Â Â Â  As the Illinois Court of Appeals explained, vacating a void judgment entirely destroys it and the vacatur restores the parties to the status quo ante, as though the trial court judgment had never been entered. People v. Eidel, 745 N.E.2d 736, 744 (Ill. App. Ct. 2001); see also George W. Kennedy Constr., Co. v. Indus. Commân, 503 N.E.2d 1169, 1173 (Ill. Ct. App. 1987) (noting that if a judgment or decree of divorce is vacated or annulled, the marital rights, obligations, and status of the parties are revived andÂ restored and the vacation of the decree places the parties in the status in which they were before the divorce); accord Nielson v. Patterson, 65 P.3d 911, 914 (Ariz. 2003); State ex rel. Office of Pub. Counsel v. Pub. Serv. Commân, 266 S.W.3d 842, 843 (Mo. 2008).


 
 Â¶29Â Â Â Â Â Â Â  Consistent with these precedents, the federal district court has recognized that a ruling on fatherâs C.R.C.P. 60(b) motion âmay have some impact on [the childâs] legal statusâ in the federal action. Schwartz, 2014 WL 4056542, at *2. And the summary judgment motion argues that âto survive summary judgment, [father] must prove the existence of a special relationship between [the child] and the [s]tate of Colorado.â
 
 Â¶30Â Â Â Â Â Â Â  Given all this, if father is not granted the relief that he seeks, the orders entered in the dependency and neglect proceeding will probably bar father from relief in the federal action. In contrast, if fatherâs motion for C.R.C.P. 60(b) relief is granted, there is a reasonable possibility that he may be able to defeat the summary judgment motion, and then pursue his remaining claims in the federal action. Thus, the dependency and neglect orders, fromÂ which father seeks relief, impose a significant collateral consequence in fatherâs federal action.[1]
 
 Â¶31Â Â Â Â Â Â Â  Therefore, we conclude that his request for C.R.C.P. 60(b) relief is not moot. The childâs death does not alter this conclusion.
 
 2. The Childâs Death.


 
 Â¶32Â Â Â Â Â Â Â  Under somewhat similar circumstances, the Iowa Supreme Court concluded that a motion to vacate a judgment terminating a parentâs rights was not moot as a result of the childâs death. In Interest of E.C.G., 345 N.W.2d 138, 141 (Iowa 1984). It based this conclusion, in part, on an indication in the record that the parent wanted a voice in appointing a personal representative for the child,Â who might pursue a wrongful death claim. Id. The court also observed that if the anticipated wrongful death action resulted in a recovery, property rights would be affected by the courtâs ruling on the motion to vacate the order terminating parental rights. Id.


 
 Â¶33Â Â Â Â Â Â Â  We recognize that the trial court relied on In re L.W., 861 N.E.2d 546 (Ohio Ct. App. 2006). In L.W., the Ohio Court of Appeals concluded that an order adjudicating a child neglected and dependent became moot when the child died. Id. at 550-51. It explained that the adverse consequences arising from the judgment, including the impairment of the parentâs potential civil remedies against persons involved with the childâs medical care, were too speculative to warrant consideration. Id. at 551-52. Specifically, it noted that there was no indication that any civil remedies would be impaired by the childâs adjudication. Id. at 552.
 
 Â¶34Â Â Â Â Â Â Â  L.W. is distinguishable from fatherâs circumstances. As we have previously discussed, the dependency and neglect orders are actively being argued to bar fatherâs claims stemming from the childâs death under 42 U.S.C. Â§ 1983. Thus, in contrast to L.W., the collateral consequence arising from the orders is not speculative.


 
 Â¶35Â Â Â Â Â Â Â  For these reasons, the trial court erred in finding that fatherâs motion for C.R.C.P. 60(b) relief was moot.
 
 III. Mootness Exception
 
 Â¶36Â Â Â Â Â Â Â  Alternatively, we conclude that even if fatherâs motion was moot, the district court should nonetheless have considered its merits because its substantive issue fell within the exceptions to the mootness doctrine.
 
 Â¶37Â Â Â Â Â Â Â  Two exceptions apply to the mootness doctrine. State Bd. of Chiropractic Examârs v. Stjernholm, 935 P.2d 959, 971 (Colo. 1997). First, a court may resolve a moot case if it concerns a matter that is capable of repetition yet evading review. Id. Second, a court may hear a moot case that involves issues of great public importance or recurring constitutional violation. Id.
 
 A. Capable of Repetition Yet Evading Review
 
 Â¶38Â Â Â Â Â Â Â  A case may be capable of repetition yet evading review even when the precise factual circumstances from which the controversy arose are unlikely to recur. Cloverleaf Kennel Club, Inc. v. Colo. Racing Commân, 620 P.2d 1051, 1054 (Colo. 1980).
 
 Â¶39Â Â Â Â Â Â Â  The issue presented in fatherâs C.R.C.P. 60(b) motion concerns the Divisionâs alleged failure to exercise due diligence to ascertainÂ his identity, locate him, and serve him personally, before it served him by publication under section 19-3-503(8)(b), C.R.S. 2014. Issues concerning the failure to properly identify and serve unnamed parents may well recur yet evade judicial review.


 
 Â¶40Â Â Â Â Â Â Â  First, the failure to identify and properly serve an unnamed parent is not unique to this case. See White v. Davis, 163 Colo. 122, 126-27, 428 P.2d 909, 911 (1967) (remanding for a hearing on fatherâs motion to vacate the adoption decrees based on his claims that he had no notice of the adoption proceeding and had been improperly served by publication when his residence was known); C.L.S., 252 P.3d at 559-60 (concluding that a termination judgment was void when mother intentionally misrepresented that she did not know fatherâs identity and whereabouts and father had no notice of the proceeding); In re J.M.A., 240 P.3d 547, 548 (Colo. App. 2010) (remanding for a hearing on fatherâs C.R.C.P. 60(b) motion when motherâs failure to disclose his identity resulted in the termination of his parental rights without his knowledge).
 
 Â¶41Â Â Â Â Â Â Â  Second, claims that parents were improperly served by publication under section 19-3-503(8)(b) are capable of evading review because parents who are served by publication are less likelyÂ to learn of dependency and neglect proceedings concerning their children. See Watts v. Crawford, 896 P.2d 807, 811 n.5 (Cal. 1995) (â[I]t is generally recognized that service by publication rarely results in actual notice.â).


 
 Â¶42Â Â Â Â Â Â Â  To be sure, situations may arise in which a parent will learn of the dependency or neglect proceedings and challenge service under section 19-3-503(8)(b), as father did here, albeit after his childâs death. But as discussed above concerning the collateral consequences doctrine, we are also not persuaded that father should be denied review of the orders at issue under the mootness doctrine solely because his child died before he was able to do so. See Trinidad Sch. Dist. No. 1, 963 P.2d at 1102 (rejecting the argument that a graduated studentâs challenge to a high school drug testing policy did not meet the âcapable of repetition yet evading reviewâ mootness exception because younger students would have sufficient time to fully litigate the policyâs constitutionality).
 
 Â¶43Â Â Â Â Â Â Â  Thus, while it may be unlikely that the precise circumstances presented by father will recur, the underlying substantive questionÂ is one of a recurring nature that may otherwise evade judicial review.


 
 B. Issue of Great Public Importance
 
 Â¶44Â Â Â Â Â Â Â  Moreover, the issue of what efforts due diligence requires before a parent may be served by publication under section 19-3Â­503(8)(b) affects parental rights of constitutional magnitude. See People In Interest of O.C., 2013 CO 56, Â¶10 (concluding that the issue of whether a relative could intervene as of right in termination and placement hearings was a matter of great public importance because it impacted, among other things, decisions regarding placement of children and parental rights). An adjudicatory order decreeing a child dependent and neglected allows the state to intervene into the familial relationship. People in Interest of S.N. v. S.N., 2014 CO 64, Â¶10. It also overcomes the presumption that the parent is acting or will act in the childâs best interests. People in Interest of N.G., 2012 COA 131, Â¶Â¶30-31.
 
 Â¶45Â Â Â Â Â Â Â  Because we have concluded that the order is not moot for these reasons, we do not address fatherâs remaining contention that the court erred by failing to adopt a collateral consequences exception to the mootness doctrine.


 IV. Conclusion

 Â¶46Â Â Â Â Â Â Â  The order is reversed, and the matter is remanded to the trial court to consider the merits of fatherâs C.R.C.P. 60(b) motion. We express no opinion concerning the ultimate outcome that the trial court may reach on remand.

 JUDGE WEBB and JUDGE RICHMAN concur.


 [1] Thus, the dependency and neglect orders, from which father seeks relief, satisfy the collateral consequence test because of their possible impact in fatherâs federal action. In reaching this holding, we do not intend to suggest that allowing father to obtain C.R.C.P. 60(b)(3) relief, if he can demonstrate that he is entitled to such relief, will necessarily guarantee his ability to successfully pursue his federal 42 U.S.C. Â§ 1983 claims. We hold only that fatherâs request for C.R.C.P. 60(b)(3) relief is not moot because there is a reasonable possibility that the challenged dependency and neglect orders will result in a collateral consequence to him in the federal action. See Moland v. People, 757 P.2d 137, 139 (Colo. 1988); see also Williams v. Ragaglia, 802 A.2d 778, 783 (Conn. 2002). Ultimately, the effect of vacating the dependency and neglect orders will need to be determined in the federal action.




These opinions are not final. They may be modified, changed or withdrawn in accordance with Rules 40 and 49 of the Colorado Appellate Rules. Changes to or modifications of these opinions resulting from any action taken by the Court of Appeals or the Supreme Court are not incorporated here. 



Colorado Court of Appeals Opinions || July 30, 2015


Back